# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

|  |  |  |
|---|---|---|
| RODOLFO VELA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 4:23-cv-3376 |
| DEPUTY ANTHONY LEWIS, | ) | Jury Trial Demanded |
| DEPUTY CHANCE TALBOTT, | ) | |
| SERGEANT LOUIS MEDINA, | ) | |
| SERGEANT LELAND FAIRCHILD, | ) | |
| and LIEUTENANT CHRISTOPHER | ) | |
| ADOLPH, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

## FIRST AMENDED COMPLAINT

## Preliminary Statement

1.     On September 9, 2021, 66-year-old Rodolfo Vela stood under a tree in his front yard and watched as his adult son surrendered to two Harris County Sheriff's Office deputies in his driveway. Mr. Vela's son lay prone on the driveway with his arms outstretched and hands clearly visible.

2.     As the Deputies, Anthony Lewis and Chance Talbott, ran from their vehicles to make the arrest, Deputy Lewis swerved left towards Mr. Vela, who was standing off to the side, and purposefully knocked him to the ground, causing extensive injuries.

3.     Deputy Lewis and Deputy Talbott each knew that they were not permitted to use force against unarmed, nonthreatening civilians without justification. So after this unnecessary use of force, Deputies Lewis and Talbott, and three of their superiors on the scene, agreed that they needed to fabricate a criminal charge against Mr. Vela in order to avoid liability for assaulting him. As the supervising officer Sergeant Leland Fairchild put it, "when you have used force, you have to, you need charges."  They then conspired to frame Mr. Vela for "Interference with Public Duties," by manufacturing evidence in the form of false statements and affidavits and by deliberately misleading a judge and prosecutors.

4.     Because it was objectively unreasonable to knock Mr. Vela to the ground under the circumstances, and because Defendants conspired to frame Vela for a crime he did not commit, Mr. Vela brings this action under 42 U.S.C. § 1983 to redress Defendants' violation of his clearly established rights not to be physically assaulted

while standing in his own front yard and then framed in an attempt to cover up the excessive force.

## Parties

5.     Plaintiff Rodolfo Vela (Mr. Vela) is a husband, father, grandfather, great-grandfather, and long-time resident of Houston. Mr. Vela—now 68 years old—worked as a truck driver for many years before his recent retirement. He had never been in trouble with law enforcement before he was assaulted by a Sherriff's Office deputy on September 9, 2021. He lives with his wife and four generations of his family in a quiet, older neighborhood in northeast Houston.



*Mr. Vela and his great-granddaughter*

6.     Defendant Anthony Lewis is a deputy with the Harris County Sheriff's Office. On September 9, 2021, Deputy Lewis intentionally and unnecessarily knocked Mr. Vela to the ground, causing him significant injuries. In an effort to avoid liability for this use of excessive force, Deputy Lewis lied about the incident in his report and conspired with other officers on the scene to frame Mr. Vela for "Interference with

Public Duties." Deputy Lewis is a resident of Texas and is sued in his individual capacity.

7.       Defendant Chance A. Talbott became a patrolman for the Harris County Sheriff's Office in July 2021. Deputy Talbott watched as Deputy Lewis assaulted Mr. Vela and then conspired with other officers on the scene to frame Mr. Vela for "Interference with Public Duties." Deputy Talbott lied about the incident in his report and perjured himself in the probable cause affidavit that was used to obtain an arrest warrant against Mr. Vela. Deputy Talbott is a resident of Texas and is sued in his individual capacity.

8.       Defendant Leland Fairchild is a sergeant with the Harris County Sheriff's Office. He conspired with other officers on the scene to frame Mr. Vela for "Interference with Public Duties," instructing Deputies Lewis and Talbott "to go for interfering at this point" *because* they had used force. Sergeant Fairchild muted his bodycam and dashcam microphones as he conspired to frame Mr. Vela. Sergeant Fairchild is a resident of Texas and is sued in his individual capacity.

9.       Defendant Louis Medina is also a sergeant with the Harris County Sheriff's Office. He likewise conspired with other officers on the scene to frame Mr. Vela for "Interference with Public Duties." Sergeant Medina endorsed Deputy Talbott's perjured probable cause affidavit with his unsworn signature, despite knowing that that the affidavit contained false statements that were designed to frame Mr. Vela. Sergeant Medina muted his bodycam and dashcam microphones as

he conspired to frame Mr. Vela. Sergeant Medina is a resident of Texas and is sued in his individual capacity.

10.     Defendant Christopher Adolph is a lieutenant with the Harris County Sheriff's Office. He was the ranking officer at the scene, and he conspired with the other officers to frame Mr. Vela. Upon information and belief, Lieutenant Adolph was not wearing a bodycam, but he muted his dashcam microphone as he conspired to frame Mr. Vela. Lieutenant Adolph is a resident of Texas and is sued in his individual capacity.

## Jurisdiction and Venue

11.     Mr. Vela brings this Action under 42 U.S.C. § 1983, alleging violations of his Fourth Amendment and Fourteenth Amendment rights to be free from excessive force and malicious prosecution. This Court has subject-matter jurisdiction over Mr. Vela's § 1983 claims under 28 U.S.C. § 1331.

12.     Venue is proper in this district because all of the events complained of occurred in this district.

## The Incident

### Deputy Lewis Assaults Mr. Vela While He Stands in His Front Yard

13.     At approximately 4:00 am on September 9, 2021, Harris County Sheriff's Office deputies attempted to stop Mr. Vela's adult son, Rodolfo Vela, Jr. ("Rudy Jr."), for speeding.

14.     Based on prior interactions with the police, Rudy Jr. was afraid that deputies would mistreat him. He therefore drove home to surrender with his dad, Rodolfo Vela, Sr. (Mr. Vela), as a witness.

15.     On the way home and as deputies were chasing him, Rudy Jr. called his dad and asked him to come outside to observe the arrest.

16.     Upon being woken up by his son's phone call, Mr. Vela put on clothes and went outside to his front yard.

17.     As Mr. Vela walked to stand under his tree, Rudy Jr. pulled into the driveway, followed by Deputy Talbott.

18.     Rudy Jr. parked in the driveway. Deputy Talbott also parked in the driveway, about a car length behind Rudy Jr., while Deputy Lewis parked on the street.

19.     Mr. Vela stood in his yard off to the side, under a tree.

20.     What happens next was captured by four different recording devices: (1) Mr. Vela's Ring camera, (2) Deputy Talbott's bodycam, (3) Deputy Talbott's dashcam, and (4) Deputy Lewis's bodycam.

21.     Mr. Vela was standing in his yard with both hands visible, and Rudy Jr. was standing in Mr. Vela's driveway with both hands up.

22.     Deputies Lewis and Talbott jumped out of their vehicles and immediately began yelling in Rudy Jr.'s direction, "let me see your fucking hands" and "get on the ground."

23.     Rudy Jr. immediately complied with the officers' directions by lying on the driveway, on his stomach, with his arms extended in front of him.

24.     Mr. Vela gestured with his finger to point out his son on the ground to the deputies and then appears to disconnect the call with his son.

25.     This screenshot from Deputy Talbott's bodycam as he exited his vehicle shows Mr. Vela pointing at his son in the driveway with his phone to his ear:



26.     The two deputies had a clear path from their vehicles to Rudy Jr.

27.     Rudy Jr. remained lying on the ground with his hands visible, demonstrating his intent to cooperate and reducing any urgency to reach him.

28.     The two deputies could clearly see Mr. Vela, who was standing off to the side on his front lawn, with his hands visible.

29.     This screenshot from Deputy Lewis's bodycam shows Mr. Vela in the foreground to the left and Rudy, Jr. on the ground with his hands visible:



30.    Instead of taking a straight path from his vehicle to Rudy Jr., Deputy Lewis intentionally and unnecessarily swerved left to body-check Mr. Vela, knocking him to the ground. Deputy Lewis shouted "get out of the way" as he swerved towards Mr. Vela, just before he made contact. Mr. Vela was already standing out of the way and had no time to comply with this confusing instruction.

31.    After knocking Mr. Vela backwards onto the ground, Deputy Lewis then swerved back to the right and continued toward Rudy Jr., who was still lying prone on the driveway, as shown in the below screenshot from Deputy Talbott's bodycam:



32.     The assault occurred approximately seven seconds after Deputy Lewis exited his vehicle. In that time, Mr. Vela did not move from his spot under his tree. He did not approach the deputies, walk toward or interact with his son, or reach for something in his pockets. He did not threaten the officers or display any aggression. His hands were visible the entire time. He did not violate any laws, and there was no probable cause to believe he was about to commit a crime. All he did was stand on his own property, look at the deputies, and point to his son on the ground.

33.     These circumstances did not warrant any use of force against Mr. Vela.

34.     After handcuffing Rudy Jr., Deputy Lewis returned to Mr. Vela who was lying on the ground in significant pain.

35.     Deputy Lewis did not offer to assist Mr. Vela to a sitting or standing position or offer first aid. Instead, he stood over the older man and screamed at him until another officer pulled Deputy Lewis away.

36.     About eight minutes later, while a group of officers discussed the fact that Mr. Vela was still lying on the ground in pain, Deputy Lewis joked to other officers that Mr. Vela was "just enjoying the view that [Deputy Lewis] gave him."

**Defendants Conspire to Frame Mr. Vela in an Effort to Justify the Assault**

37.     As other officers arrived, Deputy Lewis told them that Mr. Vela "just stood there, so I did knock him down pretty hard."

38.     In particular, Deputy Lewis proceeded to brief Lieutenant Adolph, Sergeant Fairchild, and Sergeant Medina about what had transpired with Mr. Vela. Deputy Lewis was frank with his superiors about the inordinate amount of force he had used on Mr. Vela.

39.     Deputy Lewis told Lieutenant Adolph, "Well, I knocked his dad to the ground pretty hard, but he was standing right here when we pulled up, and we told him to get out of the way and he just stood there, so."

40.     Deputy Lewis told Sergeant Fairchild, "Dad ran out here, and was standing right here, and Talbott told him to get out of the way, and I then I got out and told him to move out of the way, and he just stood there. I hit him pretty hard, Sarge . . . . Son pulled in here, I knocked dad to the ground pretty hard, and then me and Talbott detained the suspect."

41.     Deputy Lewis told Lieutenant Adolph, "I knocked his dad to the ground pretty hard." He told Sergeant Fairchild, "I hit him pretty hard, Sarge." He told Sergeant Medina, "He just stood there ... I gave him a pretty good little jolt."

42.     The officers agreed that because Lewis had used force, they needed to obtain charges against Mr. Vela. As Sergeant Fairchild put it, they "need[ed] to go for interfering at this point" because "we've used force."

43.     This practice—of charging innocent bystanders who have been injured by officers—is commonplace within the Harris County Sheriff's Office and known to the Sherriff.

44.     Deputy Lewis then communicated to the rookie Deputy Talbott that he needed to convince the on-call Assistant District Attorney (ADA) that charges were warranted, saying, "Hey, Talbott, Sarge wants to go for interfering."

**All Officers but Deputy Talbott, a Rookie, Illegally Mute Their Mics as Deputy Talbott lies to the District Attorney**

45.     Deputy Talbott then called the Harris County District Attorney's Office to secure charges while three of his colleagues—Sergeant Fairchild, Deputy Lewis, and Deputy Robert Latin Baldon—listened and offered commentary and advice.

46.     As Deputy Talbott spoke to the ADA, the investigation was ongoing, and each of his three colleagues was still actively participating in the investigation. Despite state law and Sheriff's Office written policy forbidding officers from muting their bodycam mics during ongoing investigations, Sergeant Fairchild, Deputy Lewis, and Deputy Baldon each muted their mics as Deputy Talbott spoke to the ADA.

47.     Deputy Talbott proceeded to lie to a felony prosecutor from the District Attorney's Office to get approval for the Interference with Public Duties charge

against Mr. Vela. Sergeant Fairchild and Deputy Lewis listened to Deputy Talbott's lies, knew them to be lies, and did nothing to intervene or correct the record.

48.     Deputy Talbott told the ADA that Mr. Vela was standing out in the driveway when the deputies arrived at his house. This was false. Mr. Vela had been standing in his front yard, off to the side of the driveway. In fact, at the time Deputy Talbott was speaking to the ADA, Mr. Vela was still lying on the ground in the same spot he had been when he was knocked over.

49.     Deputy Talbott also told the ADA that Mr. Vela walked directly between the deputies and Rudy Jr., and had "kept walking into the line of fire" after being told to move. This was false. As Deputy Lewis communicated many times to the other officers at the scene, and as multiple sources of video footage confirm, Deputy Lewis knocked Mr. Vela over while he "just stood there."

50.     As Deputy Talbott spoke to the ADA, Sergeant Fairchild apparently sensed that the ADA was hesitating to accept charges against Mr. Vela. Sergeant Fairchild can be heard on Deputy Talbott's bodycam audio saying, "I'll call the chief, they'll take it …. Regardless of use of force, it's interfering, but especially when you have used force, you have to, you need charges."

51.     Eventually, the ADA accepted the charges against Mr. Vela.

52.     In a supplemental report written and filed by Deputy Lewis, Deputy Lewis wrote that Mr. Vela was "standing between deputies and the male suspect. I gave [Mr. Vela] verbal commands of 'back up' two times. [Mr. Vela] ignored verbal commands, and was standing directly in our line of site [sic] and fire of the male

suspect." This was again false. Mr. Vela was not told to back up; he was not in the line of fire but instead off to Deputy Lewis's left; and he did not ignore any verbal commands. The only command given was to "get out of the way," but that was shouted only as Deputy Lewis was already swerving towards Mr. Vela and was objectively confusing given that Mr. Vela was not, in fact, in the way.

53.     Deputy Lewis also wrote, "As I redirceted [sic] the male [Mr. Vela] back from the traffic stop, he fell backwards to the ground." This was purposefully misleading: Mr. Vela did not fall, he was shoved, as Deputy Lewis himself admitted to his fellow officers.

54.     Deputy Lewis concluded his account by stating, "Emergency Medical Services was contacted as precautionary for the suspect's father. The suspect's father was transported to HCA 24/7 [a medical facility] on the beltway by South Lake EMS. I did not observe any injuries on the suspect's father, but he was complaining of left shouler [sic] and arm pain." Again, Mr. Vela was obviously injured and could not even stand up, which Deputy Lewis had joked about by suggesting that he was still laying on the ground because he was "enjoying the view [Lewis had given] him." Mr. Vela was also shirtless at the time, and the injuries to his upper body would have been readily apparent.

55.     Deputy Talbott also perjured himself in the probable cause affidavit used to secure a warrant against Mr. Vela. In the probable cause affidavit, he wrote that Mr. Vela "stood between" the officers and Rudy Jr. and ignored multiple commands to move. This was false.

56.     Deputy Talbott also wrote that Mr. Vela "had to be physically moved in order to reach and detain" Rudy Jr.  This too was false.

57.     Sergeant Medina signed off on the probable cause affidavit as a witness, despite knowing that it contained false statements designed to frame Mr. Vela.

### **Mr. Vela's Injuries**

58.     As a result of his injuries, Mr. Vela suffers from continued pain to his back, neck, and shoulder. His injuries have required extensive treatment, follow-up care, and physical therapy.

59.     Mr. Vela had extensive upper body bruising that was very painful and debilitating for months after the incident.



60.     Since suffering these injuries, Mr. Vela has been unable to go for bike rides with his grandchildren, becomes tired after walking even short distances, and struggles with everyday tasks like carrying groceries and buttoning his shirts.

61.     In addition, Mr. Vela has extensive medical bills from the incident.

62.     The false charges against Mr. Vela were dismissed on September 22, 2021.

63.     Despite the dismissal, Mr. Vela has continued to suffer emotionally from the trauma of being assaulted and then framed by law enforcement.

### Claims for Relief

*Count One*: **Excessive Force in Violation of the Fourth Amendment Under 42 U.S.C. § 1983 (Against Defendant Lewis)**

64.     Mr. Vela incorporates all prior paragraphs here.

65.     By shoving Mr. Vela to the ground without cause, Deputy Lewis violated Mr. Vela's clearly established constitutional right to be free from excessive force under the Fourth Amendment.

66.     Mr. Vela was unlawfully assaulted when Deputy Lewis shoved him with such force that he was painfully knocked down onto the ground. Mr. Vela was unarmed, not committing a crime, and posing no threat or danger to the deputies or anyone else. Deputy Lewis's use of force was clearly excessive to the need and was objectively unreasonable.

67.     Deputy Lewis's unconstitutional acts, under color of state law, directly and proximately caused injury to Mr. Vela.

68.     Because Deputy Lewis's use of force was clearly excessive and objectively unreasonable, Deputy Lewis is liable to Mr. Vela under 42 U.S.C. § 1983. Defendants' actions were willful, deliberate, and malicious, and involved reckless or callous indifference to Mr. Vela's rights, and should be punished and deterred by an award of punitive damages against Defendants as permitted by law.

**Count Two: Deliberately Fabricating False Evidence in Order to Frame Mr. Vela in Violation of the Fourteenth Amendment Under 42 U.S.C. § 1983 (Against All Peace Officer Defendants)**

69.   Mr. Vela incorporates all prior paragraphs here.

70.   As the Fifth Circuit has proclaimed,

Deliberate framing of a person by the state offends the most strongly held values of our nation. We echo again the apt words of the First Circuit that, "if any concept is fundamental to our American system of justice, it is that those charged with upholding the law are prohibited from deliberately fabricating evidence and framing individuals.' As the Third Circuit has stated, "no sensible concept of ordered liberty is consistent with law enforcement cooking up its own evidence." Here, the framing was allegedly done in order to conceal and justify excessive force against one of the people our laws and systems are supposed to protect. The rule of law, which we have cherished since our founding, cannot abide such conduct.

*Cole v. Carson*, 802 F.3d 752, 772 (5th Cir. 2015), *cert. granted, judgment vacated sub nom. Hunter v. Cole*, 137 S. Ct. 497 (2016), and *opinion reinstated in relevant part, Cole v. Carson*, 935 F.3d 444, 447 (5th Cir. 2019), *as revised* (Aug. 21, 2019).

71.   Here, Defendants wrote and submitted sworn and unsworn statements that they knew to be false to frame Mr. Vela for a crime he did not commit.

72.   In doing so, Defendants violated Mr. Vela's clearly established right to not be framed by law enforcement.

73.   Defendants' deliberate fabrication of evidence that they submitted to a judge and a prosecutor for the purposes of concealing and justifying excessive force against Mr. Vela is so offensive to basic concepts of liberty, justice, and democracy that it "shocks the conscience" and violates Mr. Vela's clearly established Fourteenth Amendment substantive and procedural due process rights.

15

74. Additionally, or alternatively, Defendants caused Mr. Vela to be unreasonably threatened with detention and imprisonment without probable cause to believe that he had committed a crime, in violation of his rights secured by the Fourth Amendment to the United States Constitution.

75. Being framed by Defendants caused Mr. Vela emotional distress and humiliation.

76. Because Defendants deliberately framed Mr. Vela for a crime he did not commit, they are liable to Mr. Vela under 42 U.S.C. § 1983.

77. Defendants, acting under color of state law, directly and proximately caused the violations of his clearly established right to not be framed by law enforcement and the ensuing compensable injuries. Defendants' actions were willful, deliberate, and malicious, and involved reckless or callous indifference to Mr. Vela's rights, and should be punished and deterred by an award of punitive damages against Defendants as permitted by law.

### *Count Three*: Failure to Intervene Under 42 U.S.C. § 1983 (Against All Peace Officer Defendants)

78. Mr. Vela incorporates all prior paragraphs here.

79. Defendants, acting under color of state law, knew or should have known that they and others were violating Mr. Vela's clearly established constitutional rights as described in the claim.

80. Defendants each had multiple reasonable opportunities to intervene and prevent these violations but, acting with deliberate indifference, declined to do so.

81.     Defendants' failure to intervene violated Mr. Vela's clearly established constitutional rights.

82.     Through their failure to intervene, Defendants directly and proximately caused Mr. Vela's injuries.

83.     Defendants' actions were willful, deliberate, and malicious, and involved reckless or callous indifference to Mr. Vela's rights, and should be punished and deterred by an award of punitive damages against Defendants as permitted by law.

***Count Four*: Civil Conspiracy Under 42 U.S.C. § 1983 (Against All Peace Officer Defendants)**

84.     Mr. Vela incorporates all prior paragraphs here.

85.     Defendants, acting under color of state law, agreed to take actions to deprive Mr. Vela of his clearly established constitutional rights and to cover up Deputy Lewis's unconstitutional and unlawful actions, as set forth in the three claims above.

86.     Defendants agreed to fabricate evidence (or, alternatively, to ignore the fabrication of evidence) against Mr. Vela, in the form of a false probable cause affidavit, a false incident report, and false verbal statements to the Harris County District Attorney's Office that contradicted their own observations and statements on the scene. They did so in an attempt to conceal and justify Deputy Lewis's assault of Mr. Vela.

87.     Defendants' actions were willful, deliberate, and malicious, and involved reckless or callous indifference to Mr. Vela's rights, and should be punished and deterred by an award of punitive damages against Defendants as permitted by law.

## Prayer for Relief

88.     Plaintiff Rodolfo Vela demands a jury trial for all issues so triable pursuant to the Seventh Amendment of the United States Constitution and Federal Rules of Civil Procedure, and respectfully requests that this Court grant the following relief:

- A declaration that Defendants violated Mr. Vela's constitutional rights;

- An award of actual and compensatory damages, including damages for past and future physical pain and suffering, past and future medical costs, and past and future mental anguish, in an amount to be determined by a jury at trial;

- An award of punitive damages against Defendants for their willful and egregious violations of the law in an amount to be determined by a jury at trial;

- An award of costs and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988; and

- All other relief that this Court deems just and proper.

Respectfully submitted,

**WEBBER LAW**
By: */s/ Rebecca Webber*
Rebecca Webber
4228 Threadgill Street
Austin, Texas 78723

Texas Bar No. 24060805
512-537-8833
rebecca@rebweblaw.com

**GIBBS & BRUNS LLP**
Caitlin Halpern
1100 Louisiana, Suite 5300
Houston, Texas 77002

Texas Bar No. 24116474
SDTX Bar No. 3454643
713-751-5228
chalpern@gibbsbruns.com

**GERSTEIN HARROW LLP**
*/s/ Emily Gerrick*
Emily Gerrick*
810 7th St NE, Ste. 301
Washington, DC 20002
Texas Bar No. 24092417
emily@gerstein-harrow.com
202-670-4809

*/s/ Charlie Gerstein*
Charlie Gerstein
810 7th St NE, Ste. 301
Washington, DC 20002
charlie@gerstein-harrow.com

*/s/ Jason Harrow*
Jason Harrow
12100 Wilshire Blvd. Ste. 800
Los Angeles, CA 90025
jason@gerstein-harrow.com
323-744-5293

* Application for admission pending