United States District Court
Southern District of Texas
**ENTERED**
March 07, 2024
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| RODOLPHO VELA, § | |
| § | |
| Plaintiff, § | |
| § | |
| VS. § | CIVIL ACTION NO. 4:23-CV-03376 |
| § | |
| ANTHONY LEWIS, *et al.*, § | |
| § | |
| Defendants. § | |

## MEMORANDUM & ORDER

This is a § 1983 suit arising from Plaintiff Rodolfo Vela, Sr.'s encounter with several members of the Harris County Sheriff's Office. Vela brings claims for excessive force, fabrication of evidence, failure to intervene, and civil conspiracy.

Before the Court are two Motions to Dismiss, one filed by Defendants Anthony Lewis and Chance Talbott, ECF No. 20, and a second filed by Defendants Christopher Adolph, Louis Medina, and Leland Fairchild, ECF No. 14. For the reasons the follow, the Court finds that Lewis and Talbott's Motion to Dismiss should be **DENIED** and Adolph, Medina, and Fairchild's Motion to Dismiss should be **GRANTED IN PART** and **DENIED IN PART**.

### I.    BACKGROUND[1]

---

[1] At this stage, all of Plaintiff's well-pleaded factual allegations are accepted as true. *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004). "When a defendant attaches documents to its [Rule 12(b)(6)] motion that are referenced in the complaint and are central to the plaintiff's claims, however, the court can also properly consider those documents." *Inclusive Communities Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 900 (5th Cir. 2019). Defendants Lewis and Talbott include Lewis's body worn camera footage as an exhibit to their Motion to Dismiss. ECF No. 20-1. Lewis's BWC footage is referenced in the Vela's

1

At around 4:00 a.m. on September 9, 2021, two Harris County Sheriff's Office deputies, Defendants Talbott and Lewis, attempted to pull over Plaintiff's son, Rodolfo Vela, Jr. ("Rudy Jr."), for speeding. ECF No. 9 ¶ 13. Rudy Jr. sought to surrender to police at his father's house and called his father to inform him that he was on his way and being followed by police. *Id.* ¶ 14. Plaintiff Rodolfo Vela, Sr. ("Vela") stood outside his house in order to observe the arrest. *Id.* ¶ 16.

Rudy Jr. pulled into the driveway of Vela's house, with Talbott pulling in directly behind him and Lewis parking on the other side of the street. *Id.* ¶ 17-18. Vela stood in his yard, which was off to the side of the driveway, with his hands visible. *Id.* ¶ 19. Upon exiting their vehicles, Talbott and Lewis immediately ordered Rudy Jr. to get on the ground and put his hands up, which he promptly did. *Id.* ¶ 22-23.

Lewis began to run towards Rudy Jr. *Id.* ¶ 30. Lewis had a clear path to Rudy Jr., with Vela standing off to the left. *Id.* Lewis then yelled "get out of the way, get out of the way" before veering slightly off course and shoving Vela to the ground. *Id.*; ECF No. 20-1 at 4:05:23-25. However, Vela, who was already out of the way, did not have time in the seconds before he was hit to move further from Lewis. ECF No. 9 ¶ 30; ECF No. 20-1 at 4:05:23-25 (showing that Lewis shouted "get out of the way, get out of the way" approximately one to two seconds before hitting Vela).

In the moments before the use of force, Vela did not give officers any indication that he was a threat. ECF No. 9 ¶ 32. Vela made no movements towards the officers or Rudy Jr., he did not threaten the officers, and his hands were plainly visible. *Id.*

Lewis and Talbott handcuffed Rudy Jr. while Vela lay on the ground in pain. Lewis then returned to Vela, who was still on the ground, and proceeded to scream at him until another officer pulled Lewis away. *Id.* ¶ 35. Lewis later made jokes to other officers about the fact Vela was still

---

pleadings, which include screenshots from the video. Further, Vela has not objected to the consideration of the footage. The Court finds that the footage may be considered at this stage.

lying on the ground in pain. *Id.* ¶ 36. Vela, a 66-year-old man, sustained ample bruising and other injuries from the incident. *See id.* at 13 (showing images of extensive bruising on Vela's chest, side, and left arm).

Defendants Fairchild and Medina, sergeants in the Harris County Sheriff's Office, and Defendant Adolph, a lieutenant in the Harris County Sheriff's Office, then arrived on the scene. Lewis proceeded to describe the incident to the supervising officers, stating several times how Vela stood there and how Lewis "knock[ed] him down pretty hard." *Id.* ¶ 37-41.

From there, the officers agreed that they would have to charge Vela with interference with public duties to justify the use of force. *Id.* ¶ 42. As Fairchild stated, "when you have used force, you have to, you need charges." *Id.* ¶ 8, 42, 50. Talbott, Fairchild, Lewis, and a fourth officer who is not a party to this action proceeded to call the on-call assistant district attorney ("the ADA"). *Id.* ¶ 45. During the call, all Defendants aside from Talbott, a rookie in the department, muted their bodycam and dashcam microphones. *Id.* ¶ 46. The Harris County Sherriff's Office prohibits muting bodycam microphones during an ongoing investigation. *Id.*

During the conversation with the ADA, Talbott made several statements that were untrue, including that Vela was standing in the driveway, in Lewis's way. *Id.* ¶ 48. Further, Talbott stated that Vela "kept walking into the line of fire" despite being told to move. *Id.* ¶ 49. These statements are plainly contradicted by both Lewis's account of the incident to his supervisors as well as bodycam footage. The ADA eventually agreed to proceed with the charges. *Id.* ¶ 51.

Lewis subsequently filed a supplemental report in which he stated that Vela was standing directly in the line of fire between the officers and Rudy Jr. *Id.* ¶ 52. Lewis also wrote, "As I redirceted [sic] [Vela] back from the traffic stop, he fell backwards to the ground," failing to

mention that Vela fell because Lewis had, by his own admission during the incident, "hit him pretty hard." *Id.* ¶ 40, 53.

Talbott repeated these statements in the probable cause affidavit, indicating that Vela stood between the officers and Rudy Jr. and had willfully ignored multiple orders to move. *Id.* ¶ 55. Talbott went on to state that "Vela "had to be physically moved in order to reach and detain" Rudy Jr. *Id.* ¶ 56. Medina signed the probable cause affidavit as a witness. *Id.* ¶ 57.

The charges against Vela were subsequently dismissed. *Id.* ¶ 62.

Vela now brings claims under § 1983 alleging excessive force, fabrication of evidence, failure to intervene, and civil conspiracy. Defendants have filed two Motions to Dismiss. ECF Nos. 14, 20. Vela has responded, ECF No. 23, 26, and Defendants have replied, ECF No. 24, 27.

## II.    MOTION TO DISMISS STANDARD

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). When considering such a motion, a court must "accept the complaint's well-pleaded facts as true and view them in the light most favorable to the plaintiff." *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004); *Bustos v. Martini Club Inc.*, 599 F.3d 458, 461 (5th Cir. 2010). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A pleading need not contain detailed factual allegations but must set forth more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555

4

(internal citations omitted). The movant carries the burden of proof for dismissal under Rule 12(b)(6). *Rittgers v. United States*, 131 F. Supp. 3d 644, 649 (S.D. Tex. 2015).

### III. ANALYSIS

#### a. Excessive Force

Vela brings a claim against Lewis for excessive force in violation of the Fourth Amendment. Lewis has invoked a qualified immunity defense in his Motion to Dismiss. The qualified immunity analysis is two-fold. The Court must assess (1) whether the facts as alleged make out a violation of a constitutional right and (2) whether the right at issue was clearly established at the time of the officer's alleged misconduct. *Darden v. City of Fort Worth*, 880 F.3d 722, 727 (5th Cir. 2018); *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

##### i. Constitutional Violation

Individuals have a Fourth Amendment right to be free from excessive force in the course of an investigatory stop or arrest. *Graham v. Connor*, 490 U.S. 386 (1989); *Tennessee v. Garner,* 471 U.S. 1 (1985); *Tarver v. City of Edna*, 410 F.3d 745, 751 (5th Cir. 2005). To sustain a claim for excessive force under § 1983, a plaintiff must plead an "(1) injury (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Freeman v. Gore*, 483 F.3d 404, 416 (5th Cir. 2007) (quoting *Tarver*, 410 F.3d at 751).

Here, the only contested issue is whether the force was clearly unreasonable. The reasonableness of force is determined by analyzing "the facts and circumstances of each particular case." *Graham v. Connor,* 490 U.S. 386, 396 (1989). Relevant considerations are "the severity of

the crime at issue, whether the suspect pose[d] an immediate threat to the safety of the officers or others, and whether he [was] actively resisting arrest or attempting to evade arrest by flight." *Id.*

Here Lewis's use of force was objectively unreasonable. First, the crime alleged, interference with public duties, is only a Class B misdemeanor, suggesting that the use of force was unreasonable. *See Trammell v. Fruge*, 868 F.3d 332, 340 (5th Cir. 2017); *Reyes v. Bridgwater*, 362 F. App'x 403, 407 (5th Cir. 2010) (finding the "severity" factor from *Graham* militated against a use of force where the alleged crime was a misdemeanor). This, of course, assumes that Vela was engaged in a crime, a dubious proposition given the facts alleged.

Second, Vela posed no threat to Lewis or Talbott. His hands were clearly visible, he made no threatening gestures or remarks, and he was not attempting to intervene in the arrest of his son. This factor cuts in favor of finding that the use of force was unreasonable.

Finally, Vela was not actively resisting arrest or fleeing when Lewis shoved him to the ground.[2] "Officers may consider a suspect's refusal to comply with instructions . . . in assessing whether physical force is needed to effectuate the suspect's compliance." *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009). "However, officers must assess not only the need for force, but also 'the relationship between the need and the amount of force used.'" *Id.* Lewis argues that because Vela was commanded to get out of the way, it was reasonable for Lewis to veer off course and push him to the ground. However, based on the facts alleged and the evidence from Lewis's bodycam footage, Vela was (1) already standing out of the way and (2) had only one to two seconds to attempt to comply with Lewis's instructions. The fact that Vela was not in the way suggests that there no need for force in this situation. Further, his failure to move further out of the way was not the type of willful resistance that indicates force is necessary to facilitate compliance, but rather a

---

[2] In fact, the officers were not even attempting to arrest Vela at that point. They did not make the decision to arrest him until *after* the use of force. ECF No. 9 ¶¶ 42-45.

byproduct of the fact that Lewis gave Vela inadequate time to comply. Thus, this factor likewise weighs against finding that the use of force was reasonable.

In sum, all of the *Graham* factors suggest that Lewis's use of force against Vela, who was at that stage was merely a bystander to his son's arrest, was unreasonable. *See Westfall v. Luna*, 903 F.3d 534, 548 (5th Cir. 2018) (holding that officer's use of force was unreasonable where they pushed to the ground an individual who was allegedly interfering with public duties); *Teames v. Henry*, No. CIV. 3:03-CV-1236-H, 2004 WL 357961, at *3 (N.D. Tex. Feb. 26, 2004) (finding officer's use of force was objectively unreasonable where he pushed the arrestee's elderly wife to the ground despite her lack of interference in the arrest).

### ii. Clearly Established Law

Next, the Court must assess whether Vela's right to be free from excessive force was clearly established. A right is clearly established where "prior decisions gave reasonable warning that the conduct at issue violated constitutional rights." *Hope v. Pelzer*, 536 U.S. 730, 740 (2002). Alternatively, qualified immunity is also unavailable if the constitutional violation was "obvious." *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004).

The Court finds that Vela's right to be free from excessive force was clearly established. *See Tarver v. City of Edna*, 410 F.3d 745, 753 (5th Cir. 2005). In an analogous case where an unresisting individual who posed no threat to officers was body slammed to the ground by an officer, the Fifth Circuit clearly held that this force was in violation of the Fourth Amendment and that the officer was not entitled to qualified immunity. *Westfall v. Luna*, 903 F.3d 534, 549 (5th Cir. 2018). Like the case at hand, the plaintiff in *Westfall* was subsequently arrested for interference with public duties after the officer slammed her to the ground. If anything, the present case presents an even more clear-cut example of excessive force. The use of force in *Westfall* followed a lengthy

verbal exchange between the plaintiff and officers during which the plaintiff could have complied with the officers' instructions. In contrast, Vela had no opportunity to comply with Lewis's command. Accordingly, Vela's right to be free from excessive force was clearly established at the time of the incident, and Lewis is not entitled to qualified immunity at this stage.

### b. Fabrication of Evidence

Vela alleges Defendants all engaged in fabrication of evidence to support a charge of interference with public duties. Fabrication of evidence, even if it does not ultimately result in conviction, is a violation of the Fourteenth Amendment. *Cole v. Carson*, 802 F.3d 752, 773 (5th Cir. 2015), *judgment vacated sub nom. Hunter v. Cole*, 580 U.S. 994 (2016), *opinion reinstated in relevant part*, 905 F.3d 334 (5th Cir. 2018). To succeed on his fabrication-of-evidence claim, Vela must show that (1) the officers fabricated evidence; (2) for the purposes of falsely obtaining a charge; and (3) that the evidence influenced the decision to charge." *Crim v. Cnty. of Aransas*, No. 2:20-CV-00270, 2022 WL 4546878, at *3 (S.D. Tex. Sept. 6, 2022).

Vela has pled a claim for fabrication of evidence against Talbott, Lewis, and Fairchild. As described above, Vela has pled facts indicating that each of these officers either made or endorsed false or misleading statements on the phone with the ADA, in the probable cause affidavit, or in the supplemental report. The fact that the officers specifically discussed how they had to bring a charge against Vela since Lewis had used force on him supports a finding that this fabrication was for the purpose of obtaining a charge. Finally, Vela was charged based on their evidence, satisfying the last prong.

Defendants make two arguments for dismissal, neither of which is compelling. First, they contend that Vela's "failure to comply with lawful commands to get out of the way" constitutes

unlawful conduct under the Texas Penal Code.[3] ECF No. 20 at 5. The assertion that Vela acted unlawfully is questionable.[4] However, even assuming that the officers had probable cause to arrest Vela for interference with public duties, that fact is irrelevant for the purposes of this claim. *See Cole*, 802 F.3d at 773 ("To hold that police officers, having lawfully arrested a suspect, are then free to fabricate false [evidence] at will, would make a mockery of the notion that Americans enjoy the protection of due process of the law and fundamental justice." (quoting *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997)). That is to say, even if the officers had probable cause to arrest Vela, that would not give the officers carte blanche to fabricate additional evidence to support the charge.

Second, Defendants argue that malicious prosecution was not a clearly established constitutional violation in the Fifth Circuit until *Armstrong v. Ashley*, 60 F.4th 262 (5th Cir. 2023), which was decided after the incident. The Court need not wade into the issue of malicious

---

[3] To support their contention that Vela's conduct constitutes interference with public duties, Defendants have provided the prosecution's form motion to dismiss the charges against Vela, in which the prosecutor checked a box indicating that "probable cause exists but cannot be proven beyond a reasonable doubt at this time." ECF No. 14-1. However, this document is not properly before the Court at this stage. "[D]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000). "[F]or a document to be incorporated into the pleadings under this exception, it must (1) be attached to a defendant's motion to dismiss; (2) be referred to in the plaintiff's complaint; and (3) be central to the plaintiff's claims." *Polnac v. City of Sulphur Springs*, 555 F. Supp. 3d 309, 323 (E.D. Tex. 2021). The dismissal document is far from central to Vela's claims. In fact, it is not even mentioned in Vela's pleadings. Even if the Court were to consider it at this stage, it has no legal relevance to Vela's fabrication-of-evidence claim, as the existence of probable cause does not bar a fabrication-of-evidence claim under the Fourteenth Amendment. *See Morales v. Carrillo*, 625 F. Supp. 3d 587, 598 (W.D. Tex. 2022); *Robinson v. City of Garland*, No. 3:10-CV-2496-M, 2015 WL 9591443, at *9 (N.D. Tex. Nov. 23, 2015), *report and recommendation adopted*, No. 3:10-CV-2496-M, 2015 WL 9593623 (N.D. Tex. Dec. 31, 2015). Further, as Vela notes in his Response, any view the prosecutor had about whether probable cause existed was based upon the alleged false evidence proffered by Defendants.

[4] Defendants cite two cases to suggest that Vela's conduct rises to the level of interference with public duties, both of which are readily distinguishable from the facts alleged in this case. *See Duncantell v. State*, 230 S.W.3d 835, 842 (Tex. App. 2007); *Key v. State*, 88 S.W.3d 672, 674 (Tex. App. 2002). In both *Duncantell* and *Key*, the defendants had ample time to respond to the officers' clear and specific orders, which they repeatedly violated. Here, Vela had only a couple of seconds to comply with the order that he get out of the way, which was confusing insofar as he was not in the officers' way.

prosecution, as Vela brings a falsification-of-evidence claim, not a malicious prosecution claim. These two claims are not identical, with each involving distinct elements. *See Morales v. Carrillo*, 625 F. Supp. 3d 587, 610 (W.D. Tex. 2022) (discussing in detail the unique features of each claim). Further, the right to be free from deliberate fabrication of evidence was clearly established at the time of the incident. *See Cole*, 802 F.3d 752; *Morgan v. Chapman*, 969 F.3d 238, 250 (5th Cir. 2020).

However, Vela has not pled a claim for fabrication of evidence against either Adolph or Medina. Although he alleges Adolph knew the reality of what had transpired with Vela and had muted his dashcam microphone during the ADA call, Vela has not pled any facts suggesting that Adolph himself proffered any fabricated evidence. Vela's claims against Medina fail for the same reason. Vela alleges that Medina signed Lewis's probable cause affidavit as a witness. The Court understands this to mean that Medina signed the affidavit to verify that he witnessed the affiant, Lewis, sign the document. Witnesses to affidavits are not generally understood to be verifying the veracity of the content of a document, and Medina cannot be held liable for false statements contained in Lewis's affidavit. Accordingly, Vela has not alleged facts indicating that either Medina or Adolph fabricated evidence. The claim against Medina and Adolph for fabrication of evidence is **DISMISSED WITHOUT PREJUDICE.**

    c. **Failure to Intervene**

Vela alleges that all five of the Officers failed to intervene in the fabrication of evidence.[5] A bystander officer may be liable for failure to intervene where the officer "(1) knows that a fellow

---

[5] Vela's Response indicates that he is not asserting a bystander liability claim for failure to intervene to prevent the excessive force. *See* ECF No. 26 at 11 ("Vela states a claim against Defendants for failing to intervene to prevent the violation of his clearly established right to not be framed by law enforcement."). A claim for bystander liability for the excessive force violation would fail based on the facts alleged. "[Bystander] liability will not attach where an officer is not present at the scene of the constitutional violation." *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013). Vela does not indicate that Fairchild,

officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013); *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995). Although failure to intervene, also called bystander liability, generally arises in the context of another officer's use of force, it has also been applied when an officer fails to intervene in another's fabrication of evidence. *See, e.g.*, *Villegas v. City of El Paso*, No. EP-15-CV-00386-FM, 2020 WL 981878, at *9 (W.D. Tex. Feb. 28, 2020), *aff'd sub nom. Villegas v. Arbogast*, 836 F. App'x 334 (5th Cir. 2021).

Lewis and Talbott's sole argument for dismissal of this claim is that there was no constitutional violation, and therefore there can be no bystander liability. As discussed above, Vela has adequately pled a claim for fabrication of evidence. Thus, this argument for dismissal is insufficient.

As for Adolph, Medina, and Fairchild, they argue that they had no personal knowledge of the underlying incident and thus had no duty to intervene in the alleged falsification of evidence. Liability for failure to intervene "will not attach where an officer is not present at the scene of the constitutional violation." *Whitley*, 726 F.3d at 646. While Adolph, Medina, and Fairchild were not present for Lewis's use of force, it is the fabrication of evidence, not the excessive force, that is the predicate constitutional violation.

Here, Vela has pled that Lewis told Adolph, Medina, and Fairchild about the details of the interaction with Vela. Further, he has pled that they were present when he gave a different account of events to the ADA in order charge Vela with interference with public duties. Further, not only

---

Adolph, or Medina were on the scene at the time of the excessive force. Further, based on the facts alleged, it does not seem that Talbott observed that Lewis was about to shove Vela, nor does it seem that Talbott had an opportunity to prevent Lewis's use of force. *See Gilbert v. French*, No. CIV.A. H-06-3986, 2008 WL 394222, at *8 (S.D. Tex. Feb. 12, 2008), *aff'd*, 364 F. App'x 76 (5th Cir. 2010) (dismissing failure to intervene claim where the facts alleged indicated there was insufficient time for officers to appreciate and react to a possible use of excessive force).

11

did they witness the ADA call, but they purposefully muted their bodycam and dashcam microphones during the call despite the ongoing investigation. Viewing the facts in the light most favorable to Vela, this conduct is sufficient to suggest that Adolph, Medina, and Fairchild "acquiesced in" the alleged constitutional violation and may be liable for failure to intervene. *See Whitley*, 726 F.3d at 647.

### d. Civil Conspiracy

"To establish a cause of action based on conspiracy a plaintiff must show that the defendants agreed to commit an illegal act." *Arsenaux v. Roberts,* 726 F.2d 1022, 1024 (5th Cir. 1982); *Dayse v. Schuldt*, 894 F.2d 170, 173 (5th Cir. 1990). Conspiracy claims frequently rely on circumstantial evidence, as conspiracies "are rarely evidenced by explicit agreements." *Mack v. Newton,* 737 F.2d 1343, 1350-51 (5th Cir. 1984); *Zervas v. Faulkner*, 861 F.2d 823, 836 (5th Cir. 1988) ("[A] conspiracy is usually proved by circumstantial evidence.").

Vela has pled sufficient facts to support his civil conspiracy claim. Specifically, he alleges that Defendants explicitly discussed the need to brings charges because force was used, and that they collectively muted their bodycam microphones in violation of Harris County Sheriff's Office rules (except Talbott, who had only recently joined the force). These allegations suffice to state a claim. *See Morales v. Carrillo*, 625 F. Supp. 3d 587, 608 (W.D. Tex. 2022) (denying summary judgment on conspiracy claim based on similar circumstantial evidence of coordination between officers).

Defendants' primary argument is that Vela's civil conspiracy claim is barred by the intracorporate conspiracy doctrine. The intracorporate conspiracy doctrine dictates that officers of a corporation by definition cannot conspire with each other or the corporation. *See Thompson v. City of Galveston*, 979 F. Supp. 504, 511 (S.D. Tex. 1997). The theory behind this doctrine is that

the individuals are agents for the corporation and, as a general rule, "the acts of the agent are the acts of the corporation." *Hilliard v. Ferguson*, 30 F.3d 649, 653 (5th Cir. 1994). It then follows that agents cannot conspire with each other while acting on behalf of the same corporation. *Id.* This doctrine has been expanded to apply to individuals acting on behalf of other entities, such as local police departments. *Thompson*, 979 F. Supp. at 511.

However, intracorporate conspiracy doctrine does not apply where individuals are conspiring for their own personal purposes or are acting outside the scope of their authority. *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 603 (5th Cir. 1981) ("[W]hen the officers of a corporation act for their own personal purposes, they become independent actors, who can conspire with the corporation."); *H & B Equip. Co. v. Int'l Harvester Co.*, 577 F.2d 239, 244 (5th Cir. 1978) (finding that the intracorporate conspiracy doctrine does not apply where the agents "have an independent stake in achieving the object of the conspiracy"). This exception frequently applies where it is alleged that police officers engaged in a conspiracy to conceal the use of excessive force. *See, e.g.*, *Bright v. City of Killeen*, 532 F. Supp. 3d 389, 402 (W.D. Tex. 2021); *Morales v. Carrillo*, 625 F. Supp. 3d 587, 608 (W.D. Tex. 2022); *Cornett v. Ward*, No. 3:18-CV-1395-S, 2020 WL 906290, at *4 (N.D. Tex. Feb. 25, 2020); *Collins v. Bauer*, No. 3:11-CV-00887-B, 2012 WL 443010, at *8 (N.D. Tex. Jan. 23, 2012), *report and recommendation adopted*, No. 3:11-CV-00887-B, 2012 WL 444014 (N.D. Tex. Feb. 10, 2012). Here, Vela alleges that Defendants conspired to cover up unlawful use of force and fabrication of evidence in order to bring charges against Vela. Because such a conspiracy would be for the officers' individual benefit and is outside the bounds of their authority, Vela's claim is not barred by the intracorporate conspiracy doctrine.

### IV. CONCLUSION

Lewis and Talbott's Motion to Dismiss, ECF No. 20, is **DENIED**. Adolph, Medina, and Fairchild's Motion to Dismiss, ECF No. 14 is **GRANTED** with respect to Vela's claims of fabrication of evidence against Medina and Adolph, which are **DISMISSED WITHOUT PREJUDICE.** Adolph, Medina, and Fairchild's Motion to Dismiss is **DENIED** with respect to all other claims.

**IT IS SO ORDERED.**

Signed at Houston, Texas on March 6, 2024.

_____
Keith P. Ellison
United States District Judge