United States District Court
Southern District of Texas
**ENTERED**
June 03, 2025
Nathan Ochsner, Clerk

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **RODOLPHO VELA,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:23-CV-3376 |
| | § | |
| **ANTHONY LEWIS, CHANCE TALBOTT,** | § | |
| **LOUIS MEDINA, LELAND FAIRCHILD,** | § | |
| **and CHRISTOPHER ADOLPH,** | § | |
| | § | |
| *Defendants.* | | |

### <u>MEMORANDUM & ORDER</u>

This is a § 1983 suit arising from Plaintiff Rodolfo Vela, Sr.'s encounter with several members of the Harris County Sheriff's Office. Vela brings claims for excessive force, fabrication of evidence, failure to intervene, and civil conspiracy.

Before the Court are three Motions for Summary Judgment: one filed by Defendants Louis Medina and Christopher Adolph (ECF No. 45), a second filed by Defendant Leland Fairchild (ECF No. 46), and a third filed by Defendants Chance Talbott and Anthony Lewis (ECF No. 47). For the reasons that follow, the Court finds that all three Motions for Summary Judgment should be denied.

## I.    BACKGROUND

### a.   Factual History

At around 4:00 a.m. on September 9, 2021, two Harris County Sheriff's Office (HSCO) deputies, Defendants Anthony Lewis and Chance Talbott, initiated a traffic stop of Plaintiff's son, Rudy Vela Jr. ("Rudy Jr.") for speeding. ECF No. 48-7 (HCSO Incident Report) at 4. Defendants then engaged in a high-speed pursuit of Rudy Jr. which reached speeds of 100 miles per hour. *Id.*

1

During the pursuit, Rudy Jr. called his father, Vela, who told him to surrender to the police. ECF No. 54-2 (Vela Depo. Tr.) at 18:13-25. The two men agreed that Rudy Jr. would drive to Vela's house and surrender there so Vela could "see what they were going to do." *Id.* at 19:1-20:12. Vela exited his house wearing only slacks to observe his son's arrest. *Id.* at 36:5-8; *see also* ECF No. 48-5 (Lewis Body Camera) at 4:05:23. Vela was holding his cell phone when Defendants arrived, and he again instructed his son to surrender to the police. ECF No. 54-2 at 40:6-15.

Rudy Jr. pulled into the driveway of Vela's house, with Deputy Talbott pulling in directly behind him and Deputy Lewis parking on the street. ECF No. 48-4 (Talbott Body Camera) at 4:05:11; ECF No. 48-5 at 4:05:19. After Rudy Jr. pulled into Vela's driveway, he promptly complied with the officers' instructions to exit his vehicle and get on the ground with his hands visible. *Id.*; *see also* ECF No. 48-1 (Talbott Aff.) ¶ 6 ("The driver and sole occupant of the pursued vehicle complied with commands to get out of the vehicle and lay on the ground.").

Body camera footage shows that when Defendants Lewis and Talbott arrived at his house, Vela was standing under a tree in his front yard. ECF No. 48-4 at 4:05:13; ECF No. 48-5 at 4:05:23. As Defendants approached Rudy Jr., Vela made no movements towards the officers or Rudy Jr., did not speak to the officers, and kept his hands visible at all times. ECF No. 48-5 at 4:05:19-27; ECF No. 48-4 at 4:05:10-27. Vela contends that he was not standing in the officers' way and that the officers had a clear path from their vehicles to Rudy Jr. *See* ECF No. 54-3 (Image from Lewis Body Camera at 4:05:19); ECF No. 54-4 (Image from Talbott Body Camera at 4:05:22).

Yet instead of taking a straight route toward Rudy Jr., Defendant Lewis veered left toward Vela and pushed him to the ground. ECF No. 48-5 at 4:05:23-25; ECF No. 48-4 at 4:05:21-23. As he ran toward Vela, Defendant Lewis shouted "get out of the way, get out the way" just one to two seconds before he made contact and repeated the command after he pushed Vela to the ground.

ECF No. 48-5 at 4:05:23-27. Shortly before the contact, Deputy Talbott yelled a series of commands including "let me see your fucking hands, get down, get, move." ECF No. 48-4 at 4:05:10-18; *see also* ECF No. 54-5 (Talbott Depo. Tr.) at 117:13-118:9 (explaining that "move" was the only portion of the commands directed at Vela). Deputy Talbott asserts that he also directed Vela to move with his left hand, although the hand movement is not clear in the body camera footage. ECF No. 48-1 (Talbott Aff.) ¶ 6.

Defendants Lewis and Talbott proceeded to handcuff Rudy Jr. while Vela lay on the ground in pain. Despite allegedly considering Vela a threat, Vela was at no point frisked, handcuffed, or placed under arrest. *See* ECF No. 48-5 at 4:05-27. Instead, Vela, a 66-year-old man, remained on the ground in pain and was later transported to a clinic in an ambulance because he was unable to stand up on his own. ECF No. 54-2 at 52:7-15

While Vela lay on the ground in pain, Deputy Lewis stood over him yelling and pointing his finger. ECF No. 48-5 at 4:06-07; *see also* ECF No. 54-8 (Image from Lewis Body Camera at 4:07:55). Deputy Lewis also mocked Vela in conversations with his fellow officers, commenting "he's just enjoying the view I gave him from the ground." *Id.* at 4:14:13-19; *id.* at 4:26:26-38 ("He's saying that his shoulders hurt. I mean, maybe next time his turd-ass son decides to run from the police he won't get in the way"). When superior officers arrived on the scene, Deputy Lewis admitted "I knocked his dad to the ground pretty hard" while he "just stood there." ECF No. 48-5 at 4:08:45-53; *see also id.* at 4:11:05-25 (admitting that Vela was "standing right here" in his yard and "just stood there" when Deputy Lewis "hit him pretty hard"). He also remarked to Deputy Talbott, "dude, I hit his dad hard, bro." *Id.* at 4:09:30. Later, Deputy Lewis joked that he gave Vela "a pretty good little jolt" but "he got out of our way though." *Id.* at 4:13:55-14:05.

3

Defendants Leland Fairchild and Louis Medina, sergeants in the Harris County Sheriff's Office, and Defendant Christopher Adolph, a lieutenant in the Harris County Sheriff's Office, arrived on the scene after Deputy Lewis pushed Vela to the ground. Body camera footage captured the officers' discussions about Deputy Lewis's use of force. Vela characterizes these discussions as attempts by Deputies Lewis and Talbott to get their stories straight and brainstorm how they would justify the use of force. They agreed that they told Vela to get out of the way multiple times. ECF No. 48-5 at 4:09, 4:13. They also agreed that Vela had put Deputy Talbott "in a really bad spot" by standing "in between" the officers and Rudy Jr. *Id.* at 4:13:00-10, 4:40. After hearing Deputy Lewis's account of events, Sergeant Fairchild told Deputy Lewis that "you need to go for interfering" when talking to the district attorney. *Id.* at 4:12:10-25. Sergeant Fairchild then reiterated to Deputy Talbott that the deputies "need to go for interfering at this point" because "we've used force." *Id.* at 4:13:30-38. Defendants argue that Sergeant Fairchild's full statement that "you need to go for interfering at this point. We used force as well so" was intended to remind Talbott and Lewis to consider all actors in their investigation and seek appropriate charges. ECF No. 48-3 (Fairchild Aff.) ¶ 7.

Deputy Talbott called the assistant district attorney ("ADA") to seek charges while Deputy Lewis, Sergeant Fairchild, and others listened. ECF No. 48-4 at 4:47:50. Deputy Talbott told the ADA that Vela was standing in the driveway, ECF No. 48-4 at 4:48:50, even though he actually remained under the tree in his front yard during the entire encounter, ECF No. 48-5 at 4:05. Deputy Talbott also told the ADA that Vela "kept walking into the line of fire":

> As we got out, he walked directly between the path of us and the driver, and we gave him
>
> multiple directions to get out of the way. He failed to move, kept walking into the – into

the line of fire. One of my deputies had to actually physically move him out of the way in

order to make contact, so we want to get interfering on the father as well.

ECF No. 48-4 at 4:49:10-40; *see also id.* at 4:50:05-10 (repeating that Vela "walked into our line

of fire, directly between us and the driver"). Body camera footage shows, however, that Vela did

not move from his spot under the tree until Deputy Lewis pushed him. ECF No. 48-5 at 4:05. In

his deposition, Deputy Talbott admitted that his statements to the ADA were "an error." ECF No.

54-5 at 74:25-75:16; *see also* ECF No. 48-1 ¶ 9. As Deputy Talbott spoke to the ADA, Sergeant

Fairchild told the other officers listening to the call, "I'll call the chief, they'll take it. This is clear

cut and dry interfering. Regardless of use of force, it's interfering, but especially when you have

used force, you have to, you need charges." ECF No. 48-4 at 4:50:10-25. The ADA agreed to the

interference charge on Vela. *Id.* at 4:55:10-40.

In the HCSO Incident Report, Deputy Talbott, Deputy Lewis, Sergeant Fairchild, and

Lieutenant Adolph all made or approved statements about the encounter with Vela. *See* ECF No.

48-7. Deputy Talbott reported that Vela was "standing in the driveway," "was positioned between

myself and the driver," "disregarded" multiple commands to move, and "had to be physically

moved by Deputy Lewis in order to reach and detain the driver." *Id.* at 4. In a supplemental report

that listed Sergeant Fairchild as the supervisor, Deputy Lewis stated that Vela was "standing

between deputies and the male suspect," was "directly in our line of site [sic] and fire," and

"ignored verbal commands" to back up. *Id.* at 11. Deputy Lewis also stated that Vela "fell

backwards to the ground" as Deputy Lewis "redirceted [sic] [Vela] back from the traffic stop." *Id.*

Before these reports were filed, Lieutenant Adolph reviewed them to "make sure that everything

is correct" and "consistent" with the body camera footage. ECF No. 54-10 (Adolph Depo. Tr.) at

74:2-25. Lieutenant Adolph later admitted that details in the reports were not consistent with the body camera footage. *Id.* at 192:3-193:9, 197:5-198:4.

Deputy Talbott repeated his statements in a probable cause affidavit that was used to secure an arrest warrant against Vela, including that Vela "was standing in the driveway between the affiant [Deputy Talbott] and the Vela Jr. defendant," "was given multiple commands to move, which he disregarded," and "had to be physically moved in order to reach and detain Vela Jr." ECF No. 48-10 at 1-2. The probable cause affidavit was witnessed by Sergeant Medina, indicating he reviewed the document and determined it "sounded like an accurate depiction of what occurred." ECF No 54-6 at 50:11-52:12.

Vela was charged with interference with public duties, a Class B misdemeanor, but the charge was dismissed less than two weeks later. ECF No. 48-11.

### b. Procedural History

Vela brought this lawsuit on September 8, 2023. ECF No. 1. Vela filed his First Amended Complaint on September 19, 2023 with claims under § 1983 alleging excessive force, fabrication of evidence, failure to intervene, and civil conspiracy. ECF No. 9.

Defendants Anthony Lewis and Chance Talbott filed a Motion to Dismiss, ECF No. 20, as did Defendants Christopher Adolph, Louis Medina, and Leland Fairchild, ECF No. 14. On March 6, 2024, the Court issued a Memorandum & Order denying Lewis and Talbott's Motion to Dismiss and granting in part and denying in part Adolph, Medina, and Fairchild's Motion to Dismiss. ECF No. 28. The Court dismissed the fabrication of evidence claims against Adolph and Medina. *Id.*

Now before the Court are Defendant Medina and Adolph's Motion for Summary Judgment (ECF No. 45), Defendant Fairchild's Motion for Summary Judgment (ECF No. 46), and Defendant Talbott and Lewis's Motion for Summary Judgment (ECF No. 47).

## II.     STANDARD OF REVIEW

Summary judgment under Rule 56 "is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting FED. R. CIV. P. 56(c)). A genuine issue as to a material fact arises "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must draw all "reasonable inferences . . . in favor of the nonmoving party, but the nonmoving party 'cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence.'" *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007) (quoting *Turner v. Baylor Richardson Medical Center*, 476 F.3d 337, 343 (5th Cir. 2007)).

"[T]he movant bears the initial responsibility of demonstrating the absence of a genuine issue of material fact with respect to those issues on which the movant bears the burden of proof at trial." *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718 (5th Cir. 1995). "For any matter on which the non-movant would bear the burden of proof at trial, however, the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Id.* at 718–19.

## III.     ANALYSIS

In each of the three summary judgment motions, Defendants raise similar arguments. Specifically, Defendants argue that they are entitled to qualified immunity on each of Vela's claims and that Vela's punitive damages claim fails as a matter of law. ECF No. 45 at 5; ECF No. 46 at 5; ECF No. 47 at 5.

Qualified immunity is an affirmative defense that shields a government official "from civil damages liability unless [he] violated a statute of constitutional right that was clearly established at the time of the challenged conduct." *Reichle v. Howards*, 566 U.S. 658, 664 (2012). When a defendant invokes qualified immunity, the plaintiff must demonstrate that the defense does not apply. *See King v. Handorf*, 821 F.3d 650, 653 (5th Cir. 2016); s*ee also Dyer v. Houston*, 964 F.3d 374, 380 (5th Cir. 2020) (plaintiff "must rebut the defense [of qualified immunity] by establishing a genuine fact [dispute] as to whether the official's allegedly wrongful conduct violated clearly established law").

To overcome a claim of qualified immunity, the plaintiff must "(1) allege facts that 'make out a violation of a constitutional right,' and (2) show that the 'right at issue was clearly established at the time of the defendants' alleged misconduct.'" *Espinal v. City of Houston*, 96 F.4th 741, 748 (5th Cir. 2024). At the summary judgment stage, the evidence that shows potential violation of a constitutional right must be taken "in the light most favorable to the party asserting the injury." *Tolan v. Cotton*, 572 U.S. 650, 655-56 (2014).

### a. Excessive Force

Vela asserts a claim against Deputy Lewis for excessive force in violation of the Fourth Amendment.

### i. Constitutional Violation

Starting with the first prong of the qualified immunity analysis, the Court, viewing the facts in the light most favorable to Vela, considers whether Deputy Lewis's actions violated Vela's Fourth Amendment rights. Individuals have a Fourth Amendment right to be free from excessive force in the course of an investigatory stop or arrest. *Graham v. Connor*, 490 U.S. 386 (1989); *Tennessee v. Garner,* 471 U.S. 1 (1985); *Tarver v. City of Edna*, 410 F.3d 745, 751 (5th Cir. 2005).

To sustain a claim for excessive force under § 1983, a plaintiff must plead an "(1) injury (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Freeman v. Gore*, 483 F.3d 404, 416 (5th Cir. 2007) (quoting *Tarver*, 410 F.3d at 751).

Deputy Lewis contests only the third element, arguing that the use of force was "objectively reasonable." ECF No. 47 at 7. The reasonableness of force is determined by analyzing "the facts and circumstances of each particular case." *Graham,* 490 U.S. at 396. Relevant considerations are "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* Thus, the overarching question is "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them." *Id.* at 397.

On the first *Graham* factor, the severity of the crimes at issue, Deputy Lewis points to the "felony pursuit [of Rudy Jr.] where speeds reached 100 miles per hour." ECF No. 47 at 11. However, Vela was not suspected of any crime during the traffic stop, and the sole target of the stop was Rudy Jr. The severity of Rudy Jr.'s alleged crime is therefore not the relevant metric for the excessive force analysis as to Vela. *See, e.g., Newman v. Guedry*, 703 F.3d 757, 762 (5th Cir. 2012) ("As to the severity of the underlying crime, Willie, not Newman, was pulled over for a mere traffic violation. Mario, not Newman, was arrested for unpaid parking tickets.").

Instead, the relevant charge for the severity of the crimes factor is interference with public duties, a Class B misdemeanor. Under the facts and circumstances of this case, a reasonable jury could conclude that the interference with public duties charge brought against Vela was pretextual.

Alternatively, a reasonable jury could conclude, consistent with Fifth Circuit caselaw, that the use of force was excessive for such a low-level crime. *See Westfall v. Luna*, 903 F.3d 534, 547 (5th Cir. 2018) ("Westfall was arrested for interference with public duties—a minor offense."); *Trammell v. Fruge*, 868 F.3d 332, 340 (5th Cir. 2017) ("[P]ublic intoxication is a Class C misdemeanor, *see* Tex. Penal Code § 49.02(c), and thus is a minor offense militating against the use of force"); *Reyes v. Bridgewater*, 362 F. App'x 403, 407 n.5 (5th Cir. 2010) (finding the severity factor militated against use of force where the alleged crime was "likely at most a misdemeanor").

Turning to the second *Graham* factor, a fact question exists as to whether Vela posed an immediate threat to the safety of officers or others. Deputy Lewis points to the overall context of the high-speed pursuit of Rudy Jr. at 4:00 a.m. "suddenly terminating at Vela's residence with Vela alone approaching the deputies in the driveway." ECF No. 47 at 11. But viewing the facts in the light most favorable to Vela, it is not clear that a reasonable officer would have perceived Vela as a threat. A jury viewing the body camera footage could find that Deputy Lewis's account of "Vela alone approaching the deputies in the driveway" is contradicted by the video evidence. Body camera footage shows that when Deputies Lewis and Talbott arrived at his house, Vela was standing under a tree in his front yard. ECF No. 48-4 at 4:05:13; ECF No. 48-5 at 4:05:23. Furthermore, as Defendants approached Rudy Jr., Vela made no movements towards the officers or Rudy Jr., did not speak to the officers, and kept his hands visible at all times. ECF No. 48-5 at 4:05:19-27; ECF No. 48-4 at 4:05:10-27. At minimum, there is a fact issue as to whether a reasonable officer would have perceived Vela as a threat and therefore a fact issue as to whether the dangerousness factor bears in favor of using force against Vela.

As to the third and final *Graham* factor, it is clear that Vela was not attempting to flee or actively resisting arrest. Deputy Lewis concedes that "Vela did not resist" but asserts that "he certainly did not comply with directions to move and get out of the way." ECF No. 47 at 11. The Fifth Circuit has explained that "officers may consider a suspect's refusal to comply with instructions . . . in assessing whether physical force is needed to effectuate the suspect's compliance." *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009). However, there is a genuine dispute of material fact as to whether Vela refused to comply with directions from Deputies Lewis and Talbott. Body camera footage shows that, as he ran toward Vela, Deputy Lewis shouted "get out of the way, get out the way" just one to two seconds before he made contact with Vela. ECF No. 48-5 at 4:05:23-27. Footage also shows that Deputy Talbott's instruction to Vela to "move" was delivered in the middle of a series of commands ("let me see your fucking hands, get down, get, move") directed at Rudy Jr. ECF No. 48-4 at 4:05:10-18; *see also* ECF No. 54-5 at 117:13-118:9. Finally, Deputy Talbott's alleged hand movement directing Vela to move is not clear in the body camera footage. ECF No. 48-1 ¶ 6. Based on this evidence, a reasonable jury could conclude that Vela did not refuse to comply with commands from Deputies Lewis and Talbott but instead did not have the opportunity to comply with their commands.

Alternatively, a reasonable jury could conclude that Vela's mere passive resistance to instructions did not justify Deputy Lewis's use of force. The Fifth Circuit has instructed that "officers must assess not only the need for force, but also 'the relationship between the need and the amount of force used.'" *Deville*, 567 F.3d at 167. The Fifth Circuit has repeatedly found that use of force is not justified when an individual's conduct amounts only to passive resistance. *See Hanks v. Rogers*, 853 F.3d 738, 746 (5th Cir. 2017) (holding that plaintiff's initial refusals to follow officer instructions after being stopped for a "minor traffic violation" amounted to, "at most,

passive resistance" that did not justify the officer's "resort to overwhelming physical force"); *Deville*, 567 F.3d at 168 (describing plaintiff's failure to comply with officer instructions during a traffic stop as "resistance [that] was, at most, passive in that she merely refused to leave her grandchild and exit the vehicle until [her husband] came to get the child").

The cases that Deputy Lewis cites to support his invocation of qualified immunity are clearly distinguishable since each one involves suspects engaging in active resistance rather than the, at most, passive resistance of Vela. *See Bailey v. Ramos*, 125 F.4th 667, 673 (5th Cir. 2025) (holding that officers were entitled to qualified immunity on excessive force claim because plaintiff was "immediately hostile" to the police officers as shown by his yelling expletives, disobeying repeated commands to move back, moving around and toward the officers, and refusing to comply with orders to sit down even after being handcuffed); *Betts v. Brennan*, 22 F.4th 577, 583 (5th Cir. 2022) (reversing denial of summary judgment where body camera footage showed that "Betts repeatedly contested why he was stopped, ignored dozens of Brennan's commands, disputed Brennan's authority, accused him of lying, batted away his hand, warned Brennan to call other officers, and dared Brennan to tase him," and where the officer did not "immediately resort" to force "without attempting to use physical skill, negotiation, or even commands"); *Griggs v. Brewer*, 841 F.3d 308, 314 (5th Cir. 2016) ("[O]ur precedent does not clearly establish that this 'takedown' maneuver—against a drunken, erratic suspect who is resisting arrest—is constitutionally unreasonable."); *Poole v. City of Shreveport*, 691 F.3d 624, 628-29 (5th Cir. 2012) (affirming grant of summary judgment where "the officers were presented with a suspect who had been driving recklessly" and "raised his hands at an officer and actively resisted arrest" and the officers "responded with 'measured and ascending' actions that corresponded to Poole's escalating verbal and physical resistance"). Vela's case is instead comparable to Fifth Circuit cases finding

that officers were not entitled to qualified immunity for using force against arrestees engaged in passive resistance. *See Westfall*, 903 F.3d at 540; *Hanks*, 853 F.3d at 746.

In sum, Vela has presented sufficient facts to allege a violation of his constitutional right to be free from excessive force against Deputy Lewis.

### ii.  Clearly Established Law

Next, the Court turns to whether Vela's right to be free from excessive force was clearly established at the time of the events. A right is clearly established where "prior decisions gave reasonable warning that the conduct at issue violated constitutional rights." *Hope v. Pelzer*, 536 U.S. 730, 740 (2002). Alternatively, qualified immunity is unavailable if the constitutional violation was "obvious." *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004). Upon review, the Court reiterates its previous holding that Vela's right to be free from excessive force was clearly established at the time of the incident. ECF No. 28 at 7-8.

When applying the *Graham* factors, the Fifth Circuit has repeatedly found that it is clearly established law that using force against a person suspected only of a low-level misdemeanor, who is neither actively resisting nor attempting to flee, is objectively unreasonable. *See, e.g., Trammell*, 868 F.3d at 337 ("[T]he law at the time of Trammel's arrest [for public intoxication] clearly established that it was objectively unreasonable for several officers to tackle an individual who was not fleeing, not violent, not aggressive, and only resisted by pulling his arm away from an officer's grasp."); *Hanks*, 853 F.3d at 738 "[C]learly established law demonstrated that an officer violates the Fourth Amendment if he abruptly resorts to overwhelming physical force rather than continuing verbal negotiations with an individual who poses no immediate threat or flight risk, who engages in, at most, passive resistance, and whom the officer stopped for a minor traffic violation."); *Tarver*, 410 F.3d at 753 (affirming denial of summary judgment where "the severity

of the crime at issue was minimal, Tarver did not pose an immediate threat to anyone's safety, and according to the testimony of four witnesses, there was no risk of Tarver trying to escape police custody").

The Fifth Circuit has also found an "obvious case" of excessive force where officers used force against a person who had "committed no crime, posed no threat to anyone's safety, and did not resist the officers or fail to comply with a command" but was merely a bystander to another person's stop or arrest. *Newman*, 703 F.3d at 762-64 (affirming denial of summary judgment where plaintiff was a passenger in a traffic stop); *see also Westfall*, 903 F.3d at 547-48 (reversing dismissal based on qualified immunity where an officer body-slammed a woman during an investigation into her son's possession of marijuana).

Accordingly, the law at the time of the incident clearly established that Vela had a right to be free from excessive force either as a person suspected only of a low-level misdemeanor, who was neither actively resisting nor attempting to flee, or as a bystander to his son's traffic stop. Given that Vela has presented sufficient facts to allege a violation of his constitutional right to be free from excessive force and his right to be free from excessive force was clearly established at the time of the incident, Deputy Lewis is not entitled to qualified immunity on this claim.

### b. Fabrication of Evidence

Next, Vela asserts a fabrication of evidence claim against Deputy Lewis, Deputy Talbott, and Sergeant Fairchild. Vela alleges Defendants engaged in fabrication of evidence to support charging him with interference with public duties. The Court previously dismissed Vela's fabrication of evidence claims against Lieutenant Adolph or Sergeant Medina. ECF No. 28 at 10.

Fabrication of evidence, even if it does not ultimately result in conviction, is a violation of the Fourteenth Amendment. *Cole v. Carson*, 802 F.3d 752, 773 (5th Cir. 2015), *judgment vacated*

*sub nom. Hunter v. Cole*, 580 U.S. 994 (2016), *opinion reinstated in relevant part*, 905 F.3d 334 (5th Cir. 2018). To succeed on his fabrication-of-evidence claim, Vela must show that (1) the officers fabricated evidence; (2) for the purposes of falsely obtaining a charge; and (3) that the evidence influenced the decision to charge." *Crim v. Cnty. of Aransas*, No. 2:20-CV-00270, 2022 WL 4546878, at *3 (S.D. Tex. Sept. 6, 2022).

On the first factor, there is a genuine dispute of material fact as to whether the officers fabricated evidence during the phone call with the ADA, in the HCSO Incident Report, and in the probable cause affidavit used to secure a warrant for Vela's arrest. During the phone call with the ADA, Deputy Talbott stated that Vela was standing in the driveway, ECF No. 48-4 at 4:48:50, "walked directly between the path of us and the driver," and "kept walking into the – into the line of fire" after being given "multiple directions to get out of the way. ECF No. 48-4 at 4:48:50; 4:49:10-40; 4:50:05-10. While Deputy Talbott spoke to the ADA, Sergeant Fairchild told the other officers listening to the call, "I'll call the chief, they'll take it. This is clear cut and dry interfering. Regardless of use of force, it's interfering, but especially when you have used force, you have to, you need charges." *Id.* at 4:50:10-25. In the HCSO Incident Report, Deputy Talbott reported that Vela was "standing in the driveway," "was positioned between myself and the driver," "disregarded" multiple commands to move, and "had to be physically moved by Deputy Lewis in order to reach and detain the driver." ECF No. 48-7 at 4. In a supplemental report, Deputy Lewis stated that Vela was "standing between deputies and the male suspect," was "directly in our line of site [sic] and fire," and "ignored verbal commands" to back up. *Id.* at 11. Deputy Lewis also stated that Vela "fell backwards to the ground" as Deputy Lewis "redirceted [sic] [Vela] back from the traffic stop." *Id.* Deputy Talbott repeated several of his statements in a probable cause affidavit that was used to secure an arrest warrant against Vela, including that Vela "was standing in the

driveway between the affiant [Deputy Talbott] and the Vela Jr. defendant," "was given multiple commands to move, which he disregarded," and "had to be physically moved in order to reach and detain Vela Jr." ECF No. 48-10 at 1-2. Defendants argue that this "alleged fabrication evidence falls far short of actual fabrication and more along the lines of reasonable mistakes of perception and recall," but their own argument raises a fact question for the jury to decide.

Just as a reasonable jury could conclude that the officers fabricated evidence, a reasonable jury could also conclude that the evidence was fabricated for the purposes of falsely obtaining a charge and that the fabricated evidence influenced the decision to charge. After all, body camera footage shows the officers discussing the "need" to obtain an interfering charge against Vela before and during the call to the ADA (ECF No. 48-5 at 4:13:30-38; ECF No. 48-4 at 4:50:10-25), and several of the allegedly false statements were made directly to the ADA who signed off on the charge against Vela. A jury could conclude that if the ADA was given an alternative account of Vela's actions, namely that he stood motionless under a tree in his front yard with his hands visible observing his son's arrest, the ADA would not have charged him with interference with public duties.

Defendants make several arguments for qualified immunity, none of which are compelling. First, they argue the "quest for accuracy in reports" is "aspirational" "especially for rookies such as Lewis and Talbott." ECF No. 47 at 12. However, the test for qualified immunity is objective rather than subjective, so the inexperience of the rookie deputies does not alter the analysis. Second, Defendants argue that there was probable cause for Vela's charge for interference with public duties. *Id.* Defendants then cite Fifth Circuit caselaw finding that officers were entitled to qualified immunity on unlawful arrest and malicious prosecution claims where probable cause existed. *See Eisenbach v. Zatzkin*, 728 F. App'x 307, 310 (5th Cir. 2018); *Haggerty v. Texas S.*

*Univ.*, 391 F.3d 653, 655 (5th Cir. 2004). Yet, this Court has already explained that malicious prosecution is a distinct claim from fabrication of evidence, as is unlawful arrest, so the cited caselaw is irrelevant to Vela's claims. ECF No. 28 at 9-10. Third, Defendants assert that there is "no absolute right to a completely accurate police report." ECF No. 47 at 12. Defendants cite Fifth Circuit caselaw recognizing that there is no clearly established constitutional right to a 'completely accurate police report" or "to be free from inaccuracies in an after-the-fact police report." *Smith v. Patri*, 99 F. Appx 497, 498 (5th Cir. 2004); *Rich v. Palko*, 920 F.3d 288, 297 (5th Cir. 2019). However, the cited cases involve claims for inaccurate police reports that are distinct from the fabrication of evidence claim Vela brings.

By contrast, there is a clearly established right to be free from fabrication of evidence, even when there is probable cause for an arrest. *Traylor v. Yorka*, No. 22-10783, 2024 WL 209444, at *4 (5th Cir. Jan. 19, 2024) (quoting *Cole*, 802 F.3d at 771). As the Fifth Circuit has explained, "[d]eliberate framing of a person by the state offends the most strongly held values of our nation." *Cole*, 802 F.3d at 772. Thus, the Fifth Circuit held that, even before the *Cole* decision, "no reasonable law enforcement officer would have thought it permissible to frame somebody for a crime he or she did not commit." *Id.* at 773. Furthermore, the clearly established right to be free from fabrication of evidence extends to cases where probable cause exists for an arrest. *Id.* ("To hold that police officers, having lawfully arrested a suspect, are then free to fabricate false [evidence] at will, would make a mockery of the notion that Americans enjoy the protection of due process of the law and fundamental justice."). Therefore, district courts in the Fifth Circuit have held that a plaintiff need not establish an unlawful arrest or wrongful conviction but "must allege that an officer used the fabricated evidence against him to state a valid fabrication of evidence claim." *Brown v. Williams*, No. CV 24-423, 2025 WL 958219, at *6 (E.D. La. Mar. 31, 2025)

(collecting cases). As discussed above, Vela clearly satisfied this standard. Defendants' cited caselaw about similar but distinct claims, such as malicious prosecution or unlawful arrest, does not alter the clearly established right to be free from fabrication of evidence or the elements of the fabrication of evidence claim.

In conclusion, Vela has presented sufficient facts to allege a violation of his constitutional right to be free from deliberate fabrication of evidence, and his right to be free from deliberate fabrication of evidence, even where probable cause existed for an arrest, was clearly established at the time of the incident. Deputy Lewis, Deputy Talbott, and Sergeant Fairchild are not entitled to qualified immunity on Vela's fabrication of evidence claim.

### c.   Failure to Intervene

Vela alleges that all five officers failed to intervene in the fabrication of evidence by Deputy Lewis, Deputy Talbott, and Sergeant Fairchild. A bystander officer may be liable for failure to intervene where the officer "(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013); *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995). Although failure to intervene, also called bystander liability, generally arises in the context of another officer's use of force, it has also been applied when an officer fails to intervene in another's fabrication of evidence. *See, e.g.*, *Villegas v. City of El Paso*, No. EP-15-CV-00386-FM, 2020 WL 981878, at *9 (W.D. Tex. Feb. 28, 2020), *aff'd sub nom. Villegas v. Arbogast*, 836 F. App'x 334 (5th Cir. 2021).

Defendants' sole argument for summary judgment on Vela's failure to intervene claim is that there was no underlying constitutional violation and, thus, no duty to intervene. ECF No. 45 at 10-11; ECF No. 46 at 12; ECF No. 47 at 14. As discussed above, there are genuine disputes of

material fact as to the underlying constitutional violation for fabrication of evidence. Thus, Defendants are not entitled to summary judgment on Vela's failure to intervene claim on this basis.

### d. Civil Conspiracy

Finally, Vela alleges that all five of the officers engaged in a civil conspiracy to fabricate evidence or ignore the fabrication of evidence in order to deprive him of his constitutional rights. "To establish a cause of action based on conspiracy a plaintiff must show that the defendants agreed to commit an illegal act." *Arsenaux v. Roberts,* 726 F.2d 1022, 1024 (5th Cir. 1982); *Dayse v. Schuldt*, 894 F.2d 170, 173 (5th Cir. 1990). Defendants correctly point out that "[c]onclusory allegations that do not reference specific factual allegations tending to show an agreement do not suffice to state a civil rights conspiracy claim under § 1983." *Montgomery v. Walton*, 759 F. App'x 312, 315 (5th Cir. 2019) (per curiam) (citing *Arsenaux*, 726 F.2d at 1023-244).

Conspiracy claims frequently rely on circumstantial evidence, as conspiracies "are rarely evidenced by explicit agreements." *Mack v. Newton,* 737 F.2d 1343, 1350-51 (5th Cir. 1984); *Zervas v. Faulkner*, 861 F.2d 823, 836 (5th Cir. 1988) ("[A] conspiracy is usually proved by circumstantial evidence."). Yet Vela asserts that this is the "rare" case where the conspiracy claim is evidenced by an explicit agreement. Specifically, Vela points to the body camera footage showing Defendants discussing the "need" to obtain an interfering charge against Vela and coordinating their stories. *See, e.g.,* ECF No. 48-5 at 4:13:30-38; ECF No. 48-4 at 4:50. Defendants argue that the quoted discussions were intended only to remind Talbott and Lewis to consider all actors in their investigation and seek appropriate charges. ECF No. 48-3 ¶ 7.

Although it is true that mere conclusory allegations are insufficient to establish a conspiracy claim, Vela has tied his allegations to specific facts in the summary judgment record and alleged an explicit agreement to commit an illegal act. *See Morales v. Carrillo*, 625 F. Supp.

3d 587, 608 (W.D. Tex. 2022) (denying summary judgment on conspiracy claim based on similar circumstantial evidence of coordination between officers). A reasonable jury could conclude that the evidence as a whole demonstrates that Defendants engaged in a conspiracy to frame Vela to cover up Deputy Lewis's assault. Of course, Defendants put forward an alternative characterization of the body camera footage and evidence in the record. However, this disagreement only highlights that Vela has presented more than conclusory allegations and that there is a genuine dispute of material fact for the jury to resolve. Therefore, Defendants are not entitled to summary judgment on Vela's civil conspiracy claim.

### e.  Punitive Damages

Vela's First Amended Complaint includes a request for punitive damages. ECF No. 9 ¶ 88. At the end of each Motion for Summary Judgment, Defendants make an identical argument for summary judgment on Plaintiff's claim for punitive damages. ECF No. 45 at 11; ECF No. 46 at 13; ECF No. 47 at 14. They each argue that "Plaintiff has failed to show any evidentiary basis for an award of punitive damages," citing *Heaney v. Roberts*, 846 F.3d 795, 803 (5th Cir. 2017), because Defendants assert that they harbored no ill will or malice toward Vela. *Id.*

"Punitive damages may be awarded in § 1983 cases 'when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.'" *Heaney*, 846 F.3d at 803 (quoting *Smith v. Wade*, 461 U.S. 30, 56 (1983)). Reckless indifference has been described by the Supreme Court as "'subjective consciousness' of a risk of injury or illegality and a 'criminal indifference to civil obligations.'" *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 536 (1999). Although Defendants assert that they harbored no ill will or malice toward Vela, there is clearly a genuine dispute over whether they acted with reckless or callous indifference to the federally protected rights of Vela. Further,

the Fifth Circuit has held that allegations of a conspiracy to fabricate evidence can provide sufficient basis for an award of punitive damages. *Boyd v. Driver*, 495 F. App'x 518, 525 (5th Cir. 2012) ("Boyd's allegations of a conspiracy by prison guards to maliciously fabricate evidence and engage in perjury also satisfy the alternative 'evil intent' standard, as those allegations are plainly inconsistent with an innocent or merely negligent mindset."). Therefore, Defendants have not shown that they are entitled to summary judgment on punitive damages, and the decision to award or deny punitive damages belongs to the jury.

## IV.    CONCLUSION

Defendants Louis Medina and Christopher Adolph's Motion for Summary Judgment (ECF No. 45), Defendant Leland Fairchild's Motion for Summary Judgment (ECF No. 46), and Defendants Chance Talbott and Anthony Lewis's Motion for Summary Judgment (ECF No. 47) are **DENIED**.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas on this the 3rd day of June, 2025.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE